UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LONNIE T. CHARETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 9-242-B-W |
| | ) | |
| CONNIE M. JACKSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDED DECISION**

Lonnie T. Charette sued Connie M. Jackson in state court as a result of a motor vehicle accident that took place on or about September 25, 2006, in Aroostook County, Maine. On June 11, 2009, the United States removed the case to this court, certifying that at the time of the accident Jackson was acting within the scope of employment as an employee of the United States Postal Service. The United States has been substituted as the defendant in this action. (See Doc. No. 6.) It has now moved to dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming: (a) Charette failed to exhaust administrative remedies; (b) sovereign immunity; and (c) the claims are precluded by a two-year statute of limitation that governs administrative claims under the Federal Tort Claims Act (FTCA). The Court referred the motion for report and recommendation. I recommend that the court grant the motion to dismiss.

**Legal Standard**

"[F]ailure to comply with the FTCA's statute of limitations for filing a claim means that the district court lacks subject matter jurisdiction to entertain the suit and must dismiss it." Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003). First Circuit precedent places the burden of proving the existence of subject matter jurisdiction on the party invoking the court's jurisdiction. Id. n.8. A tort claim against a United States government employee must be

administratively pursued within two years of the injury or any claim against the United States is time barred.  Id. at 73;  28 U.S.C. § 2401(b).  The FTCA is a waiver of the United States' sovereign immunity.  The Supreme Court has warned that this limitation on the government's immunity from suit, like all waivers of sovereign immunity, must be strictly construed.  United States v. Kubrick, 444 U.S. 111, 117-18 (1979) ("[I]n construing the  statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.")

The Department of Justice has developed a particular standardized form, SF-95, to facilitate the presentation of claims.  Skwira, 334 F.3d at 70.  The purpose of the administrative claim presentment requirements and the associated regulations is to give the government sufficient time and information to investigate the incident and determine if settlement is warranted.  The requirements are not intended to throw up barriers to access to the courts or technicalities that permit the termination of claims other than on their merits.  Corte-Real v. United States, 949 F.2d 484, 486 (1st Cir. 1991).   As far as the specifics of the notice requirement:  "The test is an eminently pragmatic one:  as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of (potentially tortious) conduct and includes specification of the damages sought, it fulfills the notice-of-claim requirement."  Dynamic Image Tech., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000).

In a situation where the parties dispute the predicate facts giving rise to the court's jurisdiction, the district court has the discretion to engage in preliminary fact finding and to hold evidentiary hearings if necessary in order to determine the factual basis for its exercise of jurisdiction.  Skwira v. United States, 344 F.3d at 72.  In the present case there does not appear to

2

be any material dispute regarding the underlying facts and I recite the facts gleaned from the affidavits presented by both parties, relying primarily on the factual representations made by Plaintiff Charette.

### Factual Background

At the time of the accident Charette had information that Jackson was a rural mail delivery person, but he had no knowledge of the nature of her relationship with the Post Office (be it employee or independent contractor) and whether she was actually delivering mail at the time of the accident or was finished with her duties.  (Charette Aff. ¶¶ 1-3, Doc. No. 10-3.) Jackson was driving a privately owned vehicle.  Because of Jackson's relationship with the Post Office, on or about September 27, 2006, Charette, through his authorized insurance representative, Janine Lagasse, made contact with Manzer Belanger, Post Master at the Fort Kent Post Office at Fort Kent, Maine, to discuss Charette's claim and Jackson's status.  Belanger indicated he was aware of the accident, but was otherwise uncommunicative.  (Lagasse Aff. ¶¶ 4-5,  Doc. No. 10-2.)  Charette learned that Belanger had been at the scene of the accident taking photographs.  (Charette Aff. ¶ 4, Doc. No. 10-3.)

On September 27, 2006, Lagasse, acting on behalf of Charette, spoke with Tony Carter, the tort claims handler for the U.S. Postal Service, District of Maine.  Per Carter's request, Lagasse faxed Carter a notice of loss claim and a police accident report estimating $6,000.00 in property damage.  Carter indicated to Lagasse that the Postal Service would only be involved if there was a "subrogation paper" received from the insured's company. (Lagasse Aff. ¶¶ 6-8.)  On October 2, 2006, Lagasse mailed a letter to Carter at the U.S. Postal Service confirming in writing the receipt by him of the two forms and again demanding that the Postal Service take action with regard to the total loss of Charette's vehicle and notifying them that he also suffered

bodily injury in the accident.  Lagasse also noted Carter's indication that the Postal Service

would not investigate the claim unless there was a subrogation notice[1] sent to it.  (Lagasse Aff. ¶

9.)

The Postal Service subsequently sent Charette an SF-95 claim form to complete.

Charette tried to call Carter several times, but was unable to make contact with him.  At the same

time, Charette received a communication from a representative of Patriot Mutual, the private

insurer for the vehicle driven by Jackson, who began negotiating with him.  (Charette Aff. at ¶¶

6,7.)  When negotiations broke down, Charette filed suit in the State of Maine Superior Court

against Jackson.  The United States filed its Notice of Removal, Motion to Substitute Party, and

Scope of Employment Certification, followed by the pending 12(b)(1) Motion to Dismiss.

According to the records maintained by the United States Postal Service, Charette never

personally filed an SF-95 or any other notice of claim with the United States Postal Service prior

to June 24, 2009, at either the national or local level.  (Crump Aff. ¶¶ 4, 6-7, Doc. No. 7-2.)

### Discussion

To preserve an FTCA claim the claimant must demonstrate he has first "presented" the

claim to the appropriate federal agency.  28 U.S.C. § 2675(a).  The claim is "presented" when the

agency receives "from a claimant" or "his duly authorized agent or legal representative," an

"executed" Standard Form 95 (SF-95) "or other written notification of an incident," accompanied

by a "claim for money damages" in a "sum certain."  28 C.F.R. § 14.2(a).  The notification must

include the "title or legal capacity" of the person signing, and it must be "accompanied by

evidence of his authority to present a claim on behalf of the claimant."  28 C.F.R. § 14.2 (a).  In

this case the government claims Charette failed to make a proper presentment for a number of

---

[1]     It appears that Charette did not have collision coverage under his auto insurance policy and therefore there
was no subrogation process involving his insurance company.  Why the claims manager for the insurance agency
undertook these negotiations on Charette's behalf is unclear to me.

reasons, primarily because he never offered any evidence that Lagasse was a duly authorized agent, and most importantly, never made a demand for a sum certain.

The "sum certain" requirement has particular significance in this circuit.  In <u>Coska v. United States</u>, 114 F.3d 319 (1st Cir. 1997), Coska slipped and fell on a sidewalk owned by the U.S. Marshals Service and maintained by Barlou Management, an independent contractor. <u>Id</u>. at 320.   Coska's attorney sent letters to the Marshals Service and Barlou Management asserting that "we represent" the plaintiff and "a claim for her damages resulting from this accident is hereby made," but neither letter set forth the amount of the claim.  <u>Id</u>. at 321.  The Marshals Service responded by advising the attorney of the "sum certain" requirement and providing an SF-95, but neither Coska nor his lawyer returned the form.  <u>Id</u>.  Instead, the Marshals Service received a copy of  Coska's 118-page "demand packet" of paperwork in support of the claim.  <u>Id</u>.  Contained within that packet was a demand against *Barlou* in the amount of

$ 225,000.00.  The First Circuit affirmed dismissal for lack of subject matter jurisdiction because the attorney's letter and demand packet were missing "essential" information because they did not contain "the amount of the damages being sought" from the government.  <u>Id</u>. at 323.

Charette makes three arguments in opposition to the government's motion.  First he claims that he complied with the notice requirements of the FTCA.  In terms of compliance, Charette's primary argument appears to be that the Postal Service had actual knowledge of the accident on September 25, 2006, the day it occurred.  But <u>Coska</u> makes clear that even detailed actual knowledge about the nature of a claim does not substitute for an injured party's obligation to make a demand for a sum certain from the government.   Perhaps recognizing that this circuit's controlling precedent appears to undercut his actual notice argument, Charette makes a

secondary argument that at least as to the estimated $6,000.00 in property damage, his notice did demand a "sum certain" so that this court, at the very least, has subject matter jurisdiction over the property damage claim to the extent of the estimated damages.  However, the $6,000.00 was not put forth as a demand in the claim manager's "demand" letter.  Indeed, as the government points out, the only thing she demanded was that the Postal Service examine Charette's damaged vehicle.  A police officer's estimate of damages contained in an accident report is just that – an estimate – it is not a demand for a sum certain from Charette or his authorized representative.

Charette's third argument is that this court should apply either the doctrine of equitable estoppel or equitable tolling to prevent the government from asserting its statute of limitation defense.

> The doctrine of equitable tolling suspends the running of the statute of limitations if a plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to the suit.  Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir.1998) ("A party seeking to toll the statute must at the very least show that the information *could not* have been found by a timely diligent inquiry...").  Tolling is "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands."  Salois v. Dime Sav. Bank, FSB, 128 F.3d 20, 25 (1st Cir.1997) (citations and internal quotations omitted).

Gonzalez v. United States,  284 F.3d 281, 291 (1st Cir. 2002).  In this case, Charette knew from the date of the accident that Jackson had an association with the Postal Service and might have been working for them at the time of the accident.  He also knew the Postal Service was not going to respond to his informal inquiries or inquiries made on his behalf by others without complying with certain formalities, including filing an SF-95.  I cannot conclude other than that the exercise of reasonable diligence on Charette's part would have led to his discovery that Jackson was acting within the scope of her employment at the time of the accident.

Equitable estoppel, on the other hand, applies when a plaintiff knows of his cause of action but reasonably relies upon the defendant's conduct or statements in failing to bring suit.

Nulankeyutmonen Nkihtaqmikon v. Impson, 573 F. Supp. 2d 311, 328 (D. Me. 2008) (quoting

Ramirez-Carlo v. United States, 496 F.3d 41, 48, (1st 2007)).  In this case there is no evidence

that the government said or did anything upon which Charette might have reasonably relied in

failing to present an SF-95 or an equivalent notification.  In fact, it appears that Charette was

lulled into complacency by the fact that the car owner's insurance company was willing to

negotiate with him without requiring him to file any forms, leading him into the belief that he

would not have to deal with the government, until those negotiations broke down.  Once Charette

was unable to settle with the owner's insurance company, he sued Jackson who had been

operating a friend's car at the time of the accident.   There is no basis on those facts to apply the

doctrine of equitable estoppel against the government.

## Conclusion

Based upon the foregoing I RECOMMEND the court GRANT the government's motion

to dismiss based upon lack of subject matter jurisdiction.

### NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, and request for oral argument before the
district judge, if any is sought, within ten (10) days of being served with a copy
thereof.  A responsive memorandum and any request for oral argument before the
district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 27, 2009